UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ATLANTIC MUSIC GROUP LLC; ATLANTIC RECORDING CORPORATION; BAD BOY RECORDS LLC; ELEKTRA ENTERTAINMENT GROUP INC.; ELEKTRA ENTERTAINMENT LLC; ELEKTRA MUSIC GROUP INC.; FUELED BY RAMEN LLC; NONESUCH RECORDS INC.; RHINO ENTERTAINMENT COMPANY; RHINO ENTERTAINMENT LLC; TENTHOUSAND PROJECTS HOLDINGS LLC; WARNER MUSIC INC.; WARNER MUSIC INTERNATIONAL SERVICES LIMITED; WARNER RECORDS INC.; WARNER RECORDS LLC; WARNER RECORDS/SIRE VENTURES LLC; 300 ENTERTAINMENT LLC; INTERSONG U.S.A., INC.; UNICHAPPELL MUSIC INC.; W CHAPPELL MUSIC CORP.; W.C.M. MUSIC CORP.; WARNER CHAPPELL MUSIC, INC.; and WARNER-TAMERLANE PUBLISHING CORP.,

Plaintiffs,

-against-

LUXOTTICA GROUP S.P.A; LUXOTTICA OF AMERICA, INC.; OAKLEY, INC.; CHAPTER 4 CORP.; COSTA DEL MAR, INC.; and EYE BUY DIRECT, INC.,

Defendants.

Index No. 26-8965

**COMPLAINT AND JURY DEMAND**

Plaintiffs Atlantic Music Group LLC, Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Elektra Entertainment LLC, Elektra Music Group Inc., Fueled by Ramen LLC, Nonesuch Records Inc., Rhino Entertainment Company, Rhino Entertainment LLC, TenThousand Projects Holdings LLC, Warner Music Inc., Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, Warner Records/SIRE

Ventures LLC, 300 Entertainment LLC, Intersong U.S.A., Inc., Unichappell Music Inc., W Chappell Music Corp., W.C.M. Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. (each a "Plaintiff," and collectively, "Plaintiffs" or "WMG"), for their Complaint and Demand for Jury Trial against Luxottica Group S.p.A, Luxottica of America, Inc., Oakley, Inc., Chapter 4 Corp., Costa Del Mar, Inc., and Eye Buy Direct, Inc. (collectively, "Defendants" or "Luxottica"), allege as follows:

## INTRODUCTION

1. This is an action to stop Luxottica's repeated infringement of WMG's valuable copyrights in its sound recordings and musical compositions, and to recover damages resulting from Luxottica's willful, unlawful conduct.

2. Defendants are all companies in operation for and service of EssilorLuxottica, one of the largest developers, manufacturers, and retailers of eyewear in the world. EssilorLuxottica owns over 150 major eyewear brands, including Ray-Ban, Oakley, Costa Del Mar, Oliver Peoples, Sunglass Hut, and others (collectively, the "Luxottica Brands"), through its affiliated companies.

3. Defendants use social media marketing to advertise their products. The Luxottica Brands have over *36.14 million followers* across various social media platforms, including Facebook, Instagram, TikTok, and YouTube.[1]

---

[1] *See, e.g.*, Ray-Ban (@rayban), INSTAGRAM, https://www.instagram.com/rayban/?hl=en (last visited Oct. 5, 2026) (6 million followers); Ray-Ban (@rayban), TIKTOK, https://www.tiktok.com/@rayban?lang=en (last visited Oct. 5, 2026) (581,200 followers); Ray-Ban, FACEBOOK, https://www.facebook.com/RayBan/ (last visited Oct. 5, 2026) (14 million followers); Ray-Ban Films (@RayBanFilms), YOUTUBE, https://www.youtube.com/@RayBanFilms (last visited Oct. 5, 2026) (88,000 subscribers); Ray-Ban Meta (@raybanmeta), INSTAGRAM, https://www.instagram.com/raybanmeta/?hl=en (last visited Oct. 5, 2026) (2.3 million followers); Ray-Ban Meta (@raybanmeta), TIKTOK, https://www.instagram.com/oakley/?hl=en (last visited Oct. 5, 2026) (931,200 followers); Ray-Ban Meta (@raybanmeta), YOUTUBE, https://www.youtube.com/@raybanmeta (last visited Oct. 5, 2026) (280,000 subscribers); Oakley (@oakley), INSTAGRAM, https://www.instagram.com/oakley/?hl=en (last visited Oct. 5, 2026) (3.3 million followers); Oakley (@oakley), TIKTOK, https://www.tiktok.com/@oakley?lang=en (last visited Oct. 5, 2026) (1.1 million followers); Oakley, FACEBOOK, https://www.facebook.com/Oakley/ (last visited Oct. 5, 2026) (5.2 million followers); Oakley (@oakley), YOUTUBE, https://www.youtube.com/@Oakley (last visited Oct. 5, 2026) (174,000 subscribers); Oakley US (@oakley_us), INSTAGRAM, https://www.instagram.com/oakley_us/?hl=en (last visited Oct. 5, 2026) (85,200 followers); Sunglass Hut

4. One of the main ways Defendants advertise their products on social media is by creating, posting, and sponsoring "commercials" that showcase their products. These videos (each a "Luxottica Video," and collectively, the "Luxottica Videos") are integral to Defendants' promotional, marketing, and branding strategy.

5. Additionally, Defendants expand their marketing reach by partnering with "influencers"—individuals with large social media followings—who also create Luxottica Videos promoting Defendants' products or brands and then provide those Luxottica Videos to Defendants, who in turn post them on Defendants' social media pages.

6. The Luxottica Videos frequently feature Plaintiffs' copyrighted sound recordings and musical compositions (collectively, the "Plaintiffs' Copyrighted Works," and which are listed on Schedule A, attached hereto), including the most popular, timeless and/or viral songs written and performed by award-winning artists and songwriters, to promote the Luxottica Brands and increase Defendants' sales, revenues, and profits.

7. But Defendants do not seek permission from, or pay a license fee or other compensation to, the copyright owners—including Plaintiffs—for using those sound recordings and musical compositions in the Luxottica Videos.

---

(@sunglasshut), INSTAGRAM, https://www.instagram.com/sunglasshut/?hl=en (last visited Oct. 5, 2026) (564,000 followers); Sunglass Hut (@sunglasshut), TIKTOK, https://www.tiktok.com/@sunglasshut (last visited Oct. 5, 2026) (110,000 followers); LensCrafters (@lenscrafters), INSTAGRAM, https://www.instagram.com/lenscrafters/?hl=en (last visited Oct. 5, 2026) (78,900 followers); LensCrafters (@lenscrafters), TIKTOK, https://www.tiktok.com/@lenscrafters (last visited Oct. 5, 2026) (158,200 followers); Oliver Peoples (@oliverpeoples), INSTAGRAM, https://www.instagram.com/oliverpeoples/ (last visited Oct. 5, 2026) (486,000 followers); Oliver Peoples (@oliverpeoples), TIKTOK, https://www.tiktok.com/@oliverpeoples (last visited Oct. 5, 2026) (42,600 followers); Oliver Peoples, FACEBOOK, https://www.facebook.com/oliverpeoples/ (last visited Oct. 5, 2026) (94,000 followers); Oliver Peoples (@oliverpeoples), YOUTUBE, https://www.youtube.com/@oliverpeoples9849 (last visited Oct. 5, 2026) (2,530 subscribers); Costa Sunglasses (@costasunglasses), INSTAGRAM, https://www.instagram.com/costasunglasses/?hl=en (last visited Oct. 5, 2026) (567,000 followers).

8. All Plaintiffs are indirect subsidiaries of Warner Music Group Corp. ("WMGC"), one of the world's largest music entertainment companies. Plaintiffs produce, manufacture, distribute, and license some of the most recognizable and popular sound recordings and musical compositions of all time.

9. An important portion of Plaintiffs'—and their recording artists' and songwriters'—revenue comes from licensing those sound recordings and musical compositions to others, who use these musical works in social media advertisements, videos, films, television shows, commercials, and video games.

10. Defendants have misappropriated ***at least 427*** of Plaintiffs' Copyrighted Works by incorporating them into the Luxottica Videos without authorization.

11. Defendants deliberately violated warnings from Instagram, TikTok, Meta, and YouTube that alerted users that copyrighted music could not be used in posts without first obtaining a license.

12. Defendants used the Plaintiffs' Copyrighted Works to build their brand profiles and drive sales without paying any compensation to Plaintiffs. The Plaintiffs' Copyrighted Works include sound recordings and musical compositions created, performed, and/or written by some of the world's best-selling artists and songwriters, including Ariana Grande, Bruno Mars, Charli xcx, Dua Lipa, and Fleetwood Mac. Defendants not only failed to pay for the use of Plaintiffs' Copyrighted Works, but by including these works in the Luxottica Videos without Plaintiffs' consent, Defendants deprived Plaintiffs and their artists and songwriters of the ability to control how and where their art is used.

13. Plaintiffs now bring this suit to hold Defendants accountable for its flagrant violation of copyright law and to seek redress for the damages that Defendants caused them, including damages and attorneys' fees and costs.

## PARTIES

14. Plaintiff Atlantic Music Group LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

15. Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

16. Plaintiff Bad Boy Records LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

17. Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

18. Plaintiff Elektra Entertainment LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

19. Plaintiff Elektra Music Group Inc. is a New York corporation (stock) with its principal place of business at 1633 Broadway, New York, New York.

20. Plaintiff Fueled by Ramen LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

21. Plaintiff Nonesuch Records Inc. is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

22. Plaintiff Rhino Entertainment Company is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

23. Plaintiff Rhino Entertainment LLC is a Delaware limited liability company with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

24. Plaintiff TenThousand Projects Holdings LLC is a Delaware limited liability company with its principal place of business at 12100 Wilshire Boulevard, Suite 1100, Los Angeles, California.

25. Plaintiff Warner Music Inc. is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

26. Plaintiff Warner Music International Services Limited is a limited company organized and existing under the laws of England and Wales, with its principal place of business at 27 Wrights Lane, London, England.

27. Plaintiff Warner Records Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

28. Plaintiff Warner Records LLC is a Delaware limited liability company with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

29. Plaintiff Warner Records/SIRE Ventures LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

30. Plaintiff 300 Entertainment LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

31. Plaintiff Intersong U.S.A., Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

32. Plaintiff Unichappell Music Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

33. Plaintiff W Chappell Music Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

34. Plaintiff W.C.M. Music Corp. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

35. Plaintiff Warner Chappell Music, Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

36. Plaintiff Warner-Tamerlane Publishing Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

37. Defendant Luxottica Group S.p.A. is an Italian corporation with its principal place of business at Piazzale Luigi Cadorna 3, 20121 Milan, Italy, and offices in the United States at 420 5th Avenue, New York, New York and 400 Luxottica Place, Mason, Ohio. Luxottica Group S.p.A. owns many major eyewear brands, including Ray-Ban, Costa Del Mar, Inc., Oakley, Inc., Oliver Peoples, and more.

38. On information and belief, the executives and employees who create, approve, and manage social media marketing for Defendants, including for North American markets, are employed by Luxottica Group S.p.A.[2]

39. Luxottica Group S.p.A. owns and operates the Facebook accounts for Ray-Ban, Oakley, Sunglass Hut, and Eye Buy Direct.

40. On information and belief, Luxottica Group S.p.A. owns and operates the Instagram accounts for, among other Luxottica Brands, Oakley and Sunglass Hut.

---

[2] *See, e.g.*, Viviana Bo, LINKEDIN, https://www.linkedin.com/in/vivianabo/; Magali Richer, LINKEDIN, https://www.linkedin.com/in/magaliricher/; Luzia Ribeiro da Costa, LINKEDIN, https://www.linkedin.com/in/luzia-ribeiro-da-costa/; Claudia Edwards, LINKEDIN, https://www.linkedin.com/in/claudia-edwards-5b4b20223/; Matteo Vassallo, LINKEDIN, https://www.linkedin.com/in/matteo-vassallo-aaab3266/; Quirien W., LINKEDIN, https://www.linkedin.com/in/quirienwonink/; Diego Fornero, LINKEDIN, https://www.linkedin.com/in/diegofornero/.

41. On information and belief, Luxottica Group S.p.A. owns and operates the TikTok accounts for, among other Luxottica Brands. Ray-Ban, Oakley, and Sunglass Hut.

42. On information and belief, Luxottica Group S.p.A. owns and operates the YouTube accounts for, among other Luxottica Brands, Ray-Ban, Oakley, and Sunglass Hut.

43. Defendant Luxottica of America, Inc. is an Ohio corporation with its principal places of business at 420 5th Avenue, New York, New York and 400 Luxottica Place, Mason, Ohio. Luxottica of America, Inc. is a wholly-owned subsidiary of Luxottica Group S.p.A. Luxottica of America, Inc. owns eyewear retailers LensCrafters, Pearle Vision, and Target Optical, together with Oakley retail stores, Ray-Ban retail stores, Glasses.com, FramesDirect.com, and For Eyes.

44. Luxottica of America owns and operates the Facebook account for Costa Sunglasses.

45. On information and belief, Luxottica of America owns and operates the Instagram accounts for Costa Sunglasses.

46. On information and belief, Luxottica of America owns and operates the TikTok accounts for Costa Sunglasses.

47. On information and belief, Luxottica of America owns and operates the YouTube accounts for Costa Sunglasses.

48. Luxottica of America owns or leases dozens of retail stores, distribution centers, and support facilities in New York. Luxottica of America employs thousands of New York residents, including some who specifically are employed for the purposes of marketing and advertising Defendants' products. Luxottica of America is registered to do business and maintains a registered agent in New York.

49. Defendant Oakley, Inc. is a Washington corporation with its principal place of business at 1 Icon, Foothill Ranch, California. Oakley owns the Oakley and Oliver Peoples brands, including the trademarks associated with those brands. Oakley advertises and sells its products across the world, including in New York and to New York consumers. Oakley is registered to do business and maintains a registered agent in New York.

50. Defendant Chapter 4 Corp. is a New York corporation with its principal place of business at 62 King Street, New York, New York. Chapter 4 Corp. owns the Supreme brand, including the trademarks associated with that brand.

51. Chapter 4 Corp. owns and operates the Facebook account for Supreme.

52. On information and belief, Chapter 4 Corp. owns and operates the Instagram account for Supreme.

53. On information and belief, Chapter 4 Corp. owns and operates the YouTube account for Supreme.

54. Defendant Costa Del Mar, Inc. is a Florida corporation with its principal place of business at 2361 Mason Avenue, Daytona Beach, Florida. Costa Del Mar, Inc. owns the Costa Sunglasses brand, including the trademarks associated with that brand. Costa Del Mar, Inc. advertises and sells its products across the world, including in New York and to New York consumers.

55. Defendant Eye Buy Direct, Inc. is a Texas corporation with its principal place of business at 177 E. Colorado Blvd., Pasadena, California. Eye Buy Direct, Inc. owns and operates EyeBuyDirect.com, a direct-to-consumer website selling eyewear, including the trademarks associated with that brand. Eye Buy Direct advertises and sells its products to consumers across the United States, including in New York and to New York consumers.

**JURISDICTION AND VENUE**

56. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*.

57. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of New York. *See* 28 U.S.C. § 1391(b).

58. This Court has personal jurisdiction over Defendants because each Defendant purposefully directed its infringing conduct at New York and the New York market through content posted to its own social media pages, content disseminated by its influencers and other third parties, and content created or distributed by the agencies it retained. The infringing Luxottica Videos advertised each of the Defendants' brands, stores, and products and were disseminated to New York consumers as part of an international social media marketing strategy giving rise to Plaintiffs' claims, thereby causing harm in New York. Moreover, Defendants maintain substantial operations in New York, including an American headquarters, retail stores, and distribution and fulfillment facilities. Defendants also conduct e-commerce operations, online consumer services, and nationwide delivery partnerships through which New York consumers can purchase products, obtain services, or arrange for delivery within the state.

59. A material amount of harm from each Defendant's infringing conduct was suffered in New York, including the unauthorized reproduction, distribution, and/or public performance via digital audio transmission of the Plaintiffs' Copyrighted Works, and the creation of unauthorized derivative works, which occurred within New York as a result of New York consumers' access to, and viewing of, the infringing Luxottica Videos.

## JURY DEMAND

60. Plaintiffs demand a trial by jury.

## FACTS

***Plaintiffs Invest Substantial Resources in Their Copyrighted Works***

61. Plaintiffs Atlantic Music Group LLC, Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Elektra Entertainment LLC, Elektra Music Group Inc., Fueled by Ramen LLC, Nonesuch Records Inc., Rhino Entertainment Company, Rhino Entertainment LLC, TenThousand Projects Holdings LLC, Warner Music Inc., Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, Warner Records/SIRE Ventures LLC, and 300 Entertainment LLC produce, market, promote, distribute, sell, and/or license sound recordings, including to third parties for commercial use in posts on social media platforms.

62. Plaintiffs Intersong U.S.A., Inc., Unichappell Music Inc., W Chappell Music Corp., W.C.M. Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. develop, promote, publish, acquire, administer, and/or license musical compositions, including to third parties for commercial use in posts on social media platforms.

63. Plaintiffs invest substantial money, time, effort, and creative talent in discovering and developing recording artists and songwriters; in creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists; and in developing, publishing, administering, and licensing their repertoire of musical compositions.

64. Plaintiffs' sound recordings and musical compositions are protected by copyright law.

65. Plaintiffs and their artists and songwriters earn revenue by licensing these sound recordings and musical compositions in exchange for licensing fees.

66. Some of Plaintiffs' recording artists and songwriters do not permit their musical works to be used in social media advertising or are extremely selective about such uses. The license for the use of those works is extremely valuable, since Plaintiffs would not have licensed those Plaintiffs' Copyrighted Works for the infringing uses at issue here.

67. The unauthorized use of Plaintiffs' Copyrighted Works in advertising on social media can have a significant negative impact on the overall value of Plaintiffs' Copyrighted Works.

***Social Media is a Critical Form of Marketing***

68. As traditional modes of advertising decline,[3] social media marketing has emerged as a leading way for companies to promote their products and services to a mass audience.[4]

69. Social media platforms like Facebook, YouTube, Instagram, and TikTok allow users to post a variety of content to the world, including multimedia videos that promote their brands.

70. Companies are increasingly using these videos and "content creation, digital advertising, influencer partnerships, and customer interaction" on social media platforms to

[3] Gabriel Dorosz, "Advertising projections: Traditional media declines but stabilises," INT'L NEWS MEDIA ASS'N (Sept. 17, 2025) https://www.inma.org/blogs/advertising-initiative/post.cfm/advertising-projections-traditional-media-declines-but-stabilises.

[4] Anuj Biswas & Shinki Pandey, *Role of Social Media Marketing in Driving Online Sales Growth*, 3 J. MARKETING & SOCIAL RSCH. 30, 30 (May 2, 2026) https://jmsr-online.com/article/role-of-social-media-marketing-in-driving-online-sales-growth-530/.

promote their products and services. And companies' sales and revenues are growing exponentially as a result.[5]

71. This growth is driven, in part, by harnessing the social media platforms' algorithms. The algorithms consider the content a user typically engages with and continue presenting the user with similar content.[6]

72. "Sounds," which include songs, are one of the main aspects of content that algorithms analyze.[7]

73. Consequently, when an account uses a popular song in its video or post, the algorithm is more likely to feed that video to its users.

74. Individuals viewing advertisements with music in the background have "higher emotional arousal and attention level[s]" than those who watch the advertisement without music.[8]

75. Music makes campaigns more memorable and effective and "keep[s] viewers interested and wanting more."[9]

76. According to a TikTok study, "67% of TikTok users would prefer to see videos from brands featuring popular or trending songs on TikTok."[10]

---

[5] *Id.* at 31, 35 ("The results revealed a strong positive correlation between social media marketing and online sales growth.").

[6] Alex Hern, "How TikTok's algorithm made it a success: 'It pushes the boundaries,'" GUARDIAN (Oct. 24, 2022) https://www.theguardian.com/technology/2022/oct/23/tiktok-rise-algorithm-popularity.

[7] TikTok Creator Academy (@creatoracademy), TIKTOK (May 5, 2023) https://www.tiktok.com/@creatoracademy/video/7509543733994458386 ("If most of your viewers are coming to you through a Sounds page, try using more trending sounds to increase your traffic.").

[8] Heather Janak, *How Background Music in Ads Affects Consumers*, TEXAS A&M STORIES (Aug. 16, 2021) https://stories.tamu.edu/news/2021/08/16/how-background-music-in-ads-affects-consumers/.

[9] Lisa Montenegro, *Boosting The Creative Journey: How Brands and Creators Can Use Instagram's Latest Updates*, FORBES (Sept. 8, 2023) https://www.forbes.com/councils/forbesagencycouncil/2023/09/08/boosting-the-creative-journey-how-brands-and-creators-can-use-instagrams-latest-updates/?streamIndex=0.

[10] *New studies quantify TikTok's growing impact on culture and music*, TIKTOK (July 21, 2021) https://newsroom.tiktok.com/new-studies-quantify-tiktoks-growing-impact-on-culture-and-music?lang=en/.

77. Defendants are well aware of this feedback loop and use it to drive engagement and sales.

78. As early as 2021, EssilorLuxottica's former Global Head of Social Media, Jarvis Macchi, recognized the power of social media in driving growth, explaining: "[T]echnology, social media, and digital communication can enhance the storytelling to reach the customer in a direct way and to tell the value behind the product."[11]

79. Mr. Macchi, who is currently the Global Brand and Product Director for one of the Luxottica Brands, also noted that "research says that social media [is] the first touch point to discovering a product."[12]

80. But Defendants wrongly see these platforms as a way to violate established copyright law protections and exploit protected songs without paying any compensation to rightsholders.

***Defendants Infringe on the Plaintiffs' Copyrighted Works***

81. EssilorLuxottica is one of the largest developers, manufacturers, and retailers of eyewear in the country. In June 2025, Fortune Magazine reported that EssilorLuxottica controlled 25% of the world's eyewear market. As of December 31, 2025, EssilorLuxottica owned and operated over 3,814 physical locations across North America.[13] Its North American revenue for fiscal year 2025 alone equaled €12.787 billion, *i.e.*, almost $15 billion in U.S. currency.[14]

---

[11] *A chat with Jarvis Macchi – Head of Social Media at Luxottica*, WALK THE TALK, at 17:30 (Feb. 19, 2021) (downloaded using Spotify).

[12] *Id*. at 23:01.

[13] "Q4/FY 2025 Results" ESSILORLUXOTTICA, 14 (Feb. 11, 2026) https://www.essilorluxottica.com/en/cap/content/283156/.

[14] "Q4/FY 2025 Results" ESSILORLUXOTTICA, 10 (Feb. 11, 2026) https://www.essilorluxottica.com/en/cap/content/283156/.

82. As components in a sophisticated, well-resourced multi-national conglomerate that itself owns copyrights, trademarks, and patents, Defendants are knowledgeable about intellectual property laws and actively enforce their own intellectual property rights.

83. Defendants have legal departments and intellectual property departments for their employees to consult with about how to market products in compliance with the law.

84. Defendants also have marketing departments that employ approximately 600 people, including positions such as Global Head of Social Media, Global Social Media Manager, and Marketing Media Manager.

85. Many Luxottica Brands have a significant presence on social media. For example, Ray-Ban has over 24.1 million followers across its Instagram, Facebook, and TikTok accounts.[15]

86. Defendants recognize the commercial power of social media. For example, EssilorLuxottica's former Global Head of Social Media, Jarvis Macchi, said, "one of the major topic[s] and objective[s] for the future of a brand is not just to sell something, sell a product, but to entertain a user, a customer. So retain [them] not just through products, but also through content. And [] any kind of platform that can help you entertain and get to your customer through content, that is going to be [] a good opportunity."[16]

---

[15] Ray-Ban (@rayban), INSTAGRAM, https://www.instagram.com/rayban/?hl=en (last visited Oct. 5, 2026) (6 million followers); Ray-Ban (@rayban), TIKTOK, https://www.tiktok.com/@rayban?lang=en (last visited Oct. 5, 2026) (581,200 followers); Ray-Ban, FACEBOOK, https://www.facebook.com/RayBan/ (last visited Oct. 5, 2026) (14 million followers); Ray-Ban Films (@RayBanFilms), YOUTUBE, https://www.youtube.com/@RayBanFilms (last visited Oct. 5, 2026) (88,000 subscribers); Ray-Ban Meta (@raybanmeta), INSTAGRAM, https://www.instagram.com/raybanmeta/?hl=en (last visited Oct. 5, 2026) (2.3 million followers); Ray-Ban Meta (@raybanmeta), TIKTOK, https://www.instagram.com/oakley/?hl=en (last visited Oct. 5, 2026) (931,200 followers); Ray-Ban Meta (@raybanmeta), YOUTUBE, https://www.youtube.com/@raybanmeta (last visited Oct. 5, 2026) (280,000 subscribers).

[16] *See supra* n.7 at 31:56.

87. Defendants control the creation and distribution of the promotional content on the Luxottica Brands' social media pages, including by distributing the Luxottica Videos to the Luxottica Brands' 19.29 million+ Facebook followers, 13.3 million+ Instagram followers, 2.92 million+ TikTok followers, and 544,000+ YouTube subscribers.[17]

88. Defendants also partner with "influencers"—third parties to whom Defendants provide compensation and other rewards in exchange for promoting Luxottica and its products. By working with popular influencers, Defendants draw each of these influencers' followers to Luxottica Brands' social media pages and to the Luxottica Videos. Defendants recruit these individuals—including, on information and belief, those featured in the Luxottica Videos—to collaborate with them, whereby participants are rewarded for promoting Defendants' products. On information and belief, each Defendant employs people to actively review, select, reproduce, and repost selected influencer videos on the social media pages it controls.

89. The Luxottica Videos have been critical to Defendants' success.

90. Because of the important relationship between social media advertising and Defendants' revenue growth, Defendants devote substantial resources to their social media advertising efforts. Defendants' employees, executives, and dedicated social media professionals are directly involved in creating, reproducing, and/or distributing the Luxottica Videos. This includes (1) managing official social media accounts; (2) collaborating across departments to create content and campaigns aligned with brand objectives; (3) commissioning, reviewing, and selecting Luxottica Videos for use on social media; and (4) posting and monitoring the performance of posted content.

[17] *See supra* n.3.

91. Upon information and belief, in addition to the compensation and rewards that Defendants provide influencers, Defendants' professional staff are directly involved in creating, reproducing, and/or distributing the influencer-made Luxottica Videos, including by (1) commissioning, reviewing, and selecting videos for use on social media; (2) directly working with and overseeing social media influencers with whom Defendants partner, including by providing advice and direction as to the content of the promotional videos; (3) specifically encouraging social media influencers to create video content and feature Defendants' products in their videos, including the infringing Luxottica Videos; and (4) actively reviewing influencer-made Luxottica Videos and then promoting and/or redistributing the Luxottica Videos by posting them on the Luxottica Brands' social media pages.

92. The Plaintiffs' Copyrighted Works are an essential and inseparable component of the Luxottica Videos. The Luxottica Videos typically depict an individual promoting Defendants' products, synchronized to an audio track of a popular sound recording, which embodies a popular musical composition. The audio track generally runs the full length of the Luxottica Video and includes the most familiar portion of the sound recording and underlying musical composition, such as the hook or chorus. There is typically no speaking or sound other than the Plaintiffs' Copyrighted Works integrated into the Luxottica Videos.

93. For example, **Figure 1** is a screen capture of one Luxottica Video featuring the copyrighted work "Flowers" by Miley Cyrus.




*Figure 1*

94. **Figure 2** is a close-up of the post's caption, which indicates that this video (a) was posted on Ray-Ban's TikTok page, and (b) used "Flowers" by Miley Cyrus in the video. On information and belief, this post was created and distributed by Luxottica Group S.p.A's employees.




*Figure 2*

95. **Figure 3** is a screen capture of one Luxottica Video posted on Oakley's Instagram account which features the Plaintiffs' Copyrighted Work "Bring It on Home" by Led Zeppelin. On information and belief, this post was created and distributed by Luxottica Group S.p.A's employees.




*Figure 3*

96. **Figure 4** is a screen capture of one Luxottica Video posted on Sunglass Hut's Instagram account which features the Plaintiffs' Copyrighted Work "Training Season" by Dua Lipa. On information and belief, this post was created and distributed by Luxottica Group S.p.A's employees.




*Figure 4*

97. Notably, in the post displayed in Figure 4, Luxottica Group S.p.A falsely represented that Sunglass Hut's infringing use of "Training Season" was its own "original audio."

98. Plaintiff Warner Music International Services Limited owns or controls exclusive rights to the sound recording of "Training Season" and Plaintiffs W Chappell Music Corp. and Warner-Tamerlane Publishing Corp. own or control exclusive rights to the musical composition of "Training Season."

99. Defendants falsely claim that the Plaintiffs' Copyrighted Works are "original audio" in multiple other infringing Luxottica Videos.

100. Defendants often deliberately tie the Plaintiffs' Copyrighted Works to the Luxottica Videos' content. For example, in Figure 1, Luxottica Group S.p.A (doing business as Ray-Ban) quoted the lyrics to "Flowers" in the text overlaying its video. This only further emphasizes the essential and inseparable nature of the Plaintiffs' Copyrighted Works to the Luxottica Videos.

101. The Luxottica Videos also use the Plaintiffs' Copyrighted Works to promote particular products sold by the Luxottica Brands. For example, in **Figure 5**, Luxottica Group S.p.A promotes Ray-Ban's "Gift Guide" of Ray-Ban products in a Luxottica Video that uses Plaintiffs' Copyrighted Work "Last Christmas" by WHAM!.


TikTok
Search
For You
Shop
Explore
Following
Friends
LIVE
Messages
Notifications
Upload
Profile
More
Following accounts
Accounts you follow will appear here
Company
Program
Terms & Policies
© 2025 TikTok
GIFT GUIDE
1947
34
135
56
rayban
Ray-Ban · 2023-11-29
Follow
Santa's waiting for your list. #GiftGuide #RayBan #xmaslist
original sound - user3928582929484829

*Figure 5*

102. Every time Defendants used one of the Plaintiffs' Copyrighted Works, they did so without any license or authorization for such use. None of the aforementioned examples (nor the use of any of the Plaintiffs' Copyrighted Works listed in Schedule A) was authorized by or licensed from Plaintiffs, and Defendants did not compensate Plaintiffs in any manner for these uses.

103. Attached as Schedule A is a non-exhaustive list of sound recordings and musical compositions owned and/or exclusively licensed by the identified Plaintiff at the time of infringement.

104. Beginning in July 2025, Plaintiffs discovered that Defendants infringed on every one of the Plaintiffs' Copyrighted Works in at least one Luxottica Video posted on the Luxottica Brands' social media accounts. Schedule A lists which Defendant infringed each Plaintiffs' Copyrighted Work.

105. On information and belief, there are many more infringing videos created by Defendants and their social media influencers not yet discovered by Plaintiffs. Discovery is likely to reveal hundreds, if not thousands, of additional infringements of Plaintiffs' copyrighted sound recordings and musical compositions. Plaintiffs intend to seek leave to amend this Complaint at an appropriate time to provide an expanded list of copyrighted works infringed by Defendants.

106. Defendants have been wildly successful employing this social media marketing strategy, garnering millions of followers across social media platforms, and as a result, earning hundreds of millions of dollars in annual revenues,[18] and almost ***$15 billion*** in fiscal year 2025 in North America revenue alone for the EssilorLuxottica conglomerate.

---

[18] *See supra* n.3, 8.

107. Defendants achieved this success through their blatant, willful, and repeated copyright infringement, including the infringement of at least ***427*** of Plaintiffs' most popular and valuable Copyrighted Works.

108. On information and belief, Defendants' social media marketing strategy has increased sales in Defendants' brick-and-mortar stores across the country, including New York, including three Ray-Ban locations, six Sunglass Hut locations, and four Oliver Peoples locations in Manhattan alone.

109. Defendants derive a direct financial benefit from the highly promotional nature of the Luxottica Videos, driven by the unlicensed music in those Videos, which encourage consumers to buy Luxottica's products and increase Luxottica's brand awareness and profile.

110. Courts have held that the same type of conduct engaged in by Defendants constitutes copyright infringement. For example, on July 11, 2022, United States District Judge William P. Dimitrouleas granted partial summary judgment to another music company, Universal Music Group, in its action against Bang Energy.[19] In its order, the court found that it was "undisputed that [Bang Energy] posted approximately 140 TikTok videos utilizing portions of [Universal Music Group's] copyrighted works," and concluded that the Bang defendants were liable for direct copyright infringement as a matter of law.[20] Similarly, on September 14, 2022, Judge Dimitrouleas granted partial summary judgment to another music company, Sony Music Entertainment, in its separate action against Bang Energy, concluding that the Bang defendants were liable for both direct and vicarious copyright infringement as a matter of law.[21]

---

[19] *See UMG Recs., Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV, 2022 WL 2670339, at *7 (S.D. Fla. July 11, 2022).

[20] *Id.*

[21] *Sony Music Entm't v. Vital Pharms., Inc.*, No. 21- 22825-CIV, 2022 WL 4771858, at *7-13 (S.D. Fla. Sept. 14, 2022).

***Defendants' Infringement Was Willful***

111. Defendants' infringement was clearly willful and in reckless disregard for Plaintiffs' copyrights.

112. Among other things, the social media platforms on which the infringing Luxottica Videos were posted expressly state that users have no right to post music in connection with commercial activities without proper authorization.

113. For example, the Instagram Terms of Use incorporate "Music Guidelines," which are maintained in the "Legal" section of the website for Instagram's parent company, Meta.[22] Those Music Guidelines expressly provide: "Use of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses." [23] These same Music Guidelines also apply to Facebook, which is also owned by Meta.[24]

114. This prohibition is not a recent development. As evidenced on web.archive.org (the so-called "Wayback Machine"), this specific prohibition has been incorporated in the Instagram and Meta Terms of Use since at least May 2018.[25]

115. Similarly, the TikTok Terms of Service unequivocally state that no rights are granted respecting use of sound recordings and musical compositions:

> NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED

---

[22] Meta's Music Guidelines also apply to its other subsidiaries like Facebook.

[23] *Terms of Use*, INSTAGRAM, https://help.instagram.com/581066165581870/?helpref=hc_fnav (last visited Oct. 5, 2026) (incorporating Music Guidelines).

[24] *See Music Guidelines*, FACEBOOK, https://www.facebook.com/legal/music_guidelines (last visited Oct. 5, 2026).

[25] *See, e.g.*, Facebook Music Guidelines, WAYBACK MACHINE, https://web.archive.org/web/20180517224131/https://www.facebook.com/legal/music_guidelines (May 17, 2018).

> THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE.[26]

116. TikTok's Terms of Service have contained this language since at least February 2019, and prior iterations of the Terms of Service contained materially identical provisions.[27]

117. YouTube has had similar provisions prohibiting the use of copyrighted works without appropriate permissions since January 2013.[28]

118. By operating social media accounts on these platforms, Defendants had actual or constructive knowledge of these express prohibitions.

119. Defendants' willfulness with regard to its violations on TikTok is even more egregious. On TikTok, business accounts have access to a Commercial Music Library containing songs that are pre-cleared for commercial use. TikTok expressly instructs businesses that they may not use music from its general music library for commercial purposes and that, if they use music outside the Commercial Music Library, they must ensure that they have obtained the appropriate rights and licenses.[29]

120. The Plaintiffs' Copyrighted Works on Schedule A are not included in the Commercial Music Library.

---

[26] *Terms of Service*, TIKTOK, https://www.tiktok.com/legal/page/us/terms-of-service/en (last visited Oct. 5, 2026).

[27] Declaration of Bryan Cosgrove, Director of Commercial Music & Creative Licensing at TikTok, *Sony Music Ent. v. Vital Pharm.*, No. 21 Civ. 22825 (S.D. Fla. July 14, 2022), ECF No. 134 ¶ 11.

[28] *See Terms of Service*, YOUTUBE, https://www.youtube.com/static?template=terms (last visited Oct. 5, 2026) ("[T]he Content you submit must not include third-party intellectual property (such as copyrighted material) unless you have permission from that party or are otherwise legally entitled to do so."); *see also* YouTube Terms of Service, WAYBACK MACHINE, https://web.archive.org/web/20130105115726/http://www.youtube.com/static?template=terms (Jan. 5, 2013).

[29] *Id.* ¶ 13.

121. If a commercial business chooses to use a song from outside of the Commercial Music Library, TikTok auto-populates a "Music Usage Confirmation" dialog box, which provides the business with actual knowledge that music use requires rights authorization.[30] *See* Figure 6.




*Figure 6*

122. To get past this screen and successfully post the video, the user must affirmatively represent that they obtained the appropriate copyright permissions for the selected music. This function has existed on TikTok business accounts since at least August 2020.[31]

123. Consequently, to post the infringing Luxottica Videos, Defendants affirmatively misrepresented that they obtained proper rights to do so.

[30] *Id.* ¶ 16.

[31] *Id.*

124. Every time Defendants represented to TikTok that they obtained proper rights for one of Plaintiffs' Copyrighted Works, that was false and they had not done so.

125. Defendants could have used the free music available to them in the Commercial Music Library, but instead they deliberately chose to use Plaintiffs' more popular, and more valuable, songs—without licensing or paying for them.

126. Defendants were well aware of their obligations under intellectual property law, as evidenced by their own zealous enforcement of their own intellectual property rights.

127. EssilorLuxottica's website explicitly states that "no rights or licenses shall be assigned concerning any of [Defendants' intellectual property] without the written authorisation of EssilorLuxottica or a third party who holds these rights."[32] The Luxottica Brands contain similar terms on their own websites.[33]

128. Pursuant to these terms, Defendants frequently seek to enforce their own intellectual property rights in district courts across the country. *See, e.g.*, *Luxottica Grp. S.p.A. v. Thornton*, No. 19 Civ. 05772, 2022 WL 2167685 (C.D. Cal. May 2, 2022); *Luxottica Grp., S.p.A. v. 111 Pit Stop, Inc.*, No. 19 Civ. 00015, 2020 WL 4287198 (M.D. Tenn. July 27, 2020); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 287 F. Supp. 3d 1338 (N.D. Ga. 2017); *Luxottica USA LLC v. The Partnerships & Unincorporated Associations Identified On Schedule "A"*, No. 14 Civ. 9061, 2015 WL 3818622 (N.D. Ill. June 18, 2015); *Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, No. 14 Civ. 22859, 2014 WL 4948632 (S.D. Fla. Oct. 2, 2014).

---

[32] *Legal Notice*, ESSILORLUXOTTICA (last visited Oct. 5, 2026), https://www.essilorluxottica.com/en/legal-notice/.

[33] *See, e.g.*, *Terms of Use*, RAY-BAN (Feb. 13, 2024), https://www.ray-ban.com/usa/c/terms-of-use; *Terms of Use*, OAKLEY (Feb. 15, 2024), https://www.oakley.com/en-us/legal/terms-of-use; *Terms of Use*, COSTA DEL MAR (Feb. 14, 2024), https://www.costadelmar.com/en-us/c/terms-of-use#header.

129. On December 17, 2025, Plaintiffs sent Defendants a cease-and-desist letter identifying the Luxottica Videos that featured unauthorized use of 411 of Plaintiffs' Copyrighted Works.

130. On May 6, 2026, Plaintiffs sent Defendants a second cease-and-desist letter concerning additional Luxottica Videos that infringed Plaintiffs' Copyrighted Works.

131. As further evidence of their willful copyright infringement, as of this filing, Defendants have not only failed to remove all of the previously-identified infringing uses of Plaintiffs' Copyrighted Works in the Luxottica Videos, but they continue to post infringing Luxottica Videos containing Plaintiffs' sound recordings and musical compositions.

132. In sum, Defendants have no defense for their willful disregard of Plaintiffs' copyrights.

**FIRST CAUSE OF ACTION**
**Direct Copyright Infringement**
**in Violation of 17 U.S.C. 101 *et seq*.**

133. Plaintiffs repeat and reallege the above paragraphs as if fully set forth herein.

134. Plaintiffs are the owners or exclusive licensees in the United States of rights under copyright of the Plaintiffs' Copyrighted Works identified in Schedule A, as reflected in that schedule, which copyrights are valid and subsisting.

135. Defendants utilized portions of 427 of the Plaintiffs' Copyrighted Works for commercial advertising purposes on their social media accounts without authorization from Plaintiffs.

136. Defendants' creation, posting/reposting, and/or streaming of the Luxottica Videos infringe Plaintiffs' copyrights. Among other things, Defendants have unlawfully reproduced, prepared derivative works from, distributed, publicly performed, and/or publicly performed by means of digital audio transmission the Plaintiffs' Copyrighted Works listed in Schedule A without

authorization, in violation of 17 U.S.C. § 106(1), (2), (3), (4), and/or (6).

137. Defendants' acts of infringement were knowing, deliberate, and willful, and in reckless disregard for Plaintiffs' rights.

138. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to actual damages and Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

139. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

140. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## SECOND CAUSE OF ACTION
## Contributory Copyright Infringement
## in Violation of 17 U.S.C. 101 *et seq.*

141. Plaintiffs repeat and reallege the above paragraphs as if fully set forth herein.

142. As detailed above, the third-party social media influencers who created and distributed the Luxottica Videos have likewise infringed Plaintiffs' copyrights. Defendants are liable as contributory copyright infringers for the infringing acts of these influencers. Additionally, or alternatively, Defendants are liable as contributory copyright infringers by making the

influencer-made Luxottica Videos available to the users and subscribers of the Luxottica Brands' social media platforms referenced above.

143. On information and belief, Defendants have knowledge of influencers' infringing activity (or have reason to know or are willfully blind to such infringing activity). Among other things, Luxottica's influencers generally tag Luxottica's corporate accounts; on information and belief, Luxottica receives a notification from the relevant platform each time it is tagged and reviews posts that tag Luxottica's accounts. As set forth above, Defendants had actual or constructive knowledge that the influencers' and Defendants' use of Plaintiff's Copyrighted Works in Luxottica Videos was not licensed or otherwise authorized and was infringing.

144. In addition, by promoting and/or assisting with the creation of the infringing Luxottica Videos, including by causing them to be copied, made available, and transmitted over the Luxottica Brands' social media platforms referenced above, Defendants materially contributed to the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the Copyrighted Works contained in the Luxottica Videos, including but not limited to the musical works listed in Schedule A.

145. In addition, Defendants have induced such infringement, including by posting and/or reposting the infringing Luxottica Videos, and specifically referring to the sound recordings and musical compositions used in the infringing Luxottica Videos.

146. By reviewing, assisting in the creation of, promoting, and reposting the infringing Luxottica Videos created by influencers, Defendants encouraged and promoted the infringement.

147. Defendants' acts of contributory infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

148. As a direct and proximate result of Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

149. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

150. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright.

**THIRD CAUSE OF ACTION**
**Vicarious Copyright Infringement**
**in Violation of 17 U.S.C. 101 *et seq*.**

151. Plaintiffs repeat and reallege the above paragraphs as if fully set forth herein.

152. As detailed above, third-party social media influencers who created and distributed the Luxottica Videos have likewise infringed Plaintiffs' copyrights, and Defendants are vicariously liable for the infringing acts of these influencers. Additionally, or alternatively, Defendants are liable as vicarious copyright infringers by making the Luxottica Videos available to the users and subscribers of the Luxottica Brands' social media platforms referenced above.

153. Defendants have exercised the right, ability, and authority to control and supervise the placement of the infringing Luxottica Videos on the social media platforms referenced above.

Defendants also have the ability to remove the infringing Luxottica Videos from each platform. Moreover, on information and belief, Defendants maintain the right and ability to control their influencers' infringement, as they are able (but have failed) to place conditions on the provision of commissions or other consideration to influencers, such as compliance with copyright laws, or to penalize influencers or terminate relationships with influencers who infringe music.

154. Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the Plaintiffs' Copyrighted Works contained in the Luxottica Videos, including, but not limited to, the musical works listed in Schedule A, including (among other financial benefits) increased brand recognition and product sales.

155. Defendants' acts of vicarious infringement are knowing, deliberate, willful, and in utter disregard for Plaintiffs' rights.

156. Thus, because Defendants have the ability to control, supervise, and remove the infringing Luxottica Videos posted by third parties, and they receive a direct financial benefit from the distribution and/or public performance of the Plaintiffs' Copyrighted Works contained in the infringing Luxottica Videos, Defendants are liable for vicarious copyright infringement.

157. As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

158. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

159. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant them the relief requested as follows:

a) A permanent injunction requiring that Defendants, and their officers, agents, employees, attorneys, and others in active concert or participation with each or any of them, cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created;

b) Statutory damages up to the maximum amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c), or, in the alternative, at Plaintiffs' election, Plaintiffs' actual damages and Defendants' profits from infringement, in amounts to be proven at trial;

c) Prejudgment and post-judgment interest;

d) An award of attorneys' fees and costs incurred in this action pursuant to 17 U.S.C. § 505 and to the fullest extent otherwise permitted by law; and

e) Such other and further relief as the Court may deem just and proper.

Dated: October 9, 2026
New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

Zoe Salzman
Margaret Turner
Sydney Zazzaro

One Rockefeller Plaza, 8th Floor
New York, New York 10020

(212) 763-5000

*Attorneys for Plaintiffs*